UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID CASWELL,<br><br>                    Plaintiff,<br><br>         v.<br><br>MICHAEL J. ASTRUE,<br>COMMISSIONER OF THE<br>SOCIAL SECURITY ADMINISTRATION,<br><br>                    Defendant. | Case No. ED CV 11-513-PJW<br><br>MEMORANDUM OPINION AND ORDER |

## I.  INTRODUCTION

Plaintiff appeals a decision by Defendant Social Security Administration ("the Agency"), denying his application for Supplemental Security Income ("SSI") and Disability Insurance benefits ("DIB"). He claims that the Administrative Law Judge ("ALJ") erred when he: (1) failed to properly consider the doctors' opinions; and (2) concluded that Plaintiff was not credible. For the reasons discussed below, the Court finds that the ALJ erred in addressing the medical evidence but did not err in his credibility finding. As such, the Agency's decision is reversed and the case is remanded for further proceedings consistent with this opinion.

## II. SUMMARY OF PROCEEDINGS

In October 2008, Plaintiff applied for SSI and DIB, alleging that he was disabled as of 1998. (Administrative Record ("AR") 106-14.) His application was denied initially and on reconsideration. (AR 48-52, 56-60.) He then requested and was granted a hearing before an ALJ. On March 5, 2010, he appeared for the hearing. (AR 22-42.) On June 25, 2010, the ALJ issued a decision denying benefits. (AR 9-16.) Plaintiff appealed the ALJ's decision but the Appeals Council denied review. (AR 1-5.) This appeal followed.

## III. ANALYSIS

A. The ALJ's Findings Regarding The Doctors' Opinions

Plaintiff suffers from thoracic outlet syndrome, myofascial pain syndrome, and spondylosis of the spine. (AR 12.) Dr. Andrew Hesseltine, a board certified anesthesiologist who specializes in pain management, treated Plaintiff from 2006 to 2009. (AR 207-46.) According to Dr. Hesseltine, Plaintiff is incapable of performing a full range of work due to his conditions and the pain caused by them. (AR 262-64.) The ALJ rejected this opinion and accepted, instead, the opinion of a non-treating, non-examining physician G. Taylor Holmes. (AR 14.) Plaintiff alleges that the ALJ erred in doing so. For the following reasons, the Court agrees.

Generally speaking, as a treating physician, Dr. Hesseltine's opinion was entitled to deference. *Orn v. Astrue,* 495 F.3d 625, 631 (9th Cir. 2007); *see also Morgan v. Comm'r*, 169 F.3d 595, 600 (9th Cir. 1999) (explaining treating physician's opinion "is given deference because 'he is employed to cure and has a greater opportunity to know and observe the patient as an individual.'") (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987)).

Thus, all things being equal, Dr. Hesseltine's opinion regarding Plaintiff's capacity to work should have been given controlling weight. *Orn*, 495 F.3d at 631; *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988). That being said, however, the ALJ was not required to simply accept Dr. Hesseltine's opinion and, where, as here, it was contradicted by Dr. Holmes's opinion, the ALJ was empowered to reject it for specific and legitimate reasons supported by substantial evidence in the record. *See Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) (quoting *Magallanes v. Bowen* 881 F.2d 747, 751 (9th Cir. 1989)); *Morgan*, 169 F.3d at 600.

The ALJ rejected Dr. Hesseltine's opinion because: (1) there was no evidence that he performed a thorough physical examination; (2) the treatment regimen he employed consisted of only steroid injections and pain medication; (3) the record does not contain objective findings that support Dr. Hesseltine's "extreme" limitations; and (4) Dr. Hesseltine's limitations are not consistent with the "tone" of his treatment notes, showing Plaintiff doing well and able to work with pain management. (AR 14.) The Court does not find these reasons persuasive.

The notes from Dr. Hesseltine's many visits suggest that he performed a physical examination each time he saw Plaintiff. Though many of the notes documenting the exams set forth that the results of the exams were "unchanged from previous [exams]," (AR 221, 223, 224, 227, 228, 230, 231, 232, 233, 234, 235, 236, 237, 240, 242, 243, 244, 245, 246), they clearly suggest that Dr. Hesseltine performed a physical exam each time he saw Plaintiff. Even were the Court to ignore the exams when the doctor merely noted that Plaintiff's condition was unchanged, there are still numerous other times when the

doctor recorded the specific results of the exams.  (AR 207, 209, 211, 213, 214, 216, 218, and 220.)

As to the ALJ's finding that the exams were not "thorough," the Court is not clear as to what the ALJ meant.  There is no explanation in his decision as to what was lacking.  And a review of the file does not reveal what the doctor failed to do.  Nor is the Court aware of any standard norms required for an examination to be deemed "thorough."  As such, the Court finds that the ALJ's first reason for rejecting Dr. Hesseltine's opinion is not supported by the record.

The ALJ's second reason for rejecting Dr. Hesseltine's opinion was that the treatment regimen he prescribed, which consisted of steroid injections and pain medications, undercut the doctor's opinion that Plaintiff's condition was so serious.  (AR 14.)  But there is no evidence before the Court that more aggressive measures were available and would have been used had Plaintiff really suffered from the level of pain that he claimed.  Dr. Hesseltine did not mention any.  Nor did Dr. Holmes, the reviewing physician.  According to Plaintiff, he had undergone surgery to remove one of his extra ribs and could have undergone a similar procedure to remove the other one.  (AR 24-29.)  He testified, however, that he did not have the second surgery because his doctor told him it would be risky and because he did not have insurance and could not afford it.  (AR 28-29.)  Assuming that Plaintiff's testimony about this surgery amounted to medical evidence that surgery was a viable treatment option, Plaintiff explained why he elected not to undergo it and his explanation is not contradicted in the record.  Thus, this is not a valid reason for rejecting Dr. Hesseltine's opinion.

1    The third reason cited by the ALJ for rejecting Dr. Hesseltine's
2 opinion was that the record did not contain any objective findings
3 that would support the "extreme" limitations found by Dr. Hesseltine.
4 (AR 14.)  The problem with the ALJ's reasoning here is that he did not
5 explain what objective evidence is missing.  *See*, *e.g.*, *Embrey,* 849
6 F.2d at 421 ("To say that medical opinions are not supported by
7 sufficient objective findings or are contrary to the preponderant
8 conclusions mandated by the objective findings does not achieve the
9 level of specificity our prior cases have required, even when the
10 objective factors are listed seriatim.").  Plaintiff was born with
11 extra ribs.  He had surgery to remove the one on his right side and,
12 presumably, the x-rays showed that he still has an extra one on his
13 left side.  For years, his doctor treated this condition and the pain
14 caused by it with fairly strong pain medication.  Thus, the Court is
15 at a loss to understand what objective medical evidence of Plaintiff's
16 condition is missing.

17    Perhaps what the ALJ was referring to was the objective evidence
18 that Plaintiff was not as incapacitated as he claimed, i.e., the fact
19 that for ten years after he allegedly became disabled he was still
20 working as a laborer installing sprinkler systems.  (AR 23, 145.)
21 During this period, Plaintiff worked ten hour days and occasionally
22 lifted more than 100 pounds at a time, frequently lifting more than 50
23 pounds.  (AR 146.)  When Dr. Hesseltine tested his strength during
24 examinations, Plaintiff regularly tested 5/5 on all four limbs.  (AR
25 211, 214, 225.)  During this same time frame, however, Plaintiff was
26 reporting pain at an "8" or "10" out of "10."  (AR 209, 211, 213.)  In
27 the end, the Court concludes that Dr. Hesseltine's opinion regarding
28 Plaintiff's limitations is undermined by the objective evidence before

the doctor that, despite reporting extreme levels of pain, Plaintiff was performing heavy work and the doctor knew it.  (AR 209, 211, 213, 221.)

The doctor's opinion is further called into question by the fact that, the last time he saw Plaintiff, in January 2009, Plaintiff reported his pain was at a level "6," the lowest he had ever reported it.  (AR 207.)  Yet, six months later, when Dr. Hesseltine filled out the form documenting his opinion, he concluded, essentially, that Plaintiff did not have the capacity to perform any work.  This makes no sense.  If Plaintiff could perform heavy work when he was experiencing pain at a level "10," there is no reason why he could not perform any work when he was experiencing pain at a level "6."  Presumably, this is what the ALJ was referring to when he concluded that the "tone" of Dr. Hesseltine's notes were inconsistent with the conclusion that Plaintiff was incapacitated, the ALJ's fourth reason for discounting Dr. Hesseltine's opinion.

Rather than rely on Dr. Hesseltine's opinion, the ALJ relied on the opinion of the non-treating, non-examining consulting doctor G. Taylor Holmes.  (AR 14.)  Dr. Holmes reviewed most, though not all, of Dr. Hesseltine's records and, based on them, concluded that Plaintiff was not as disabled as he claimed to be or as Dr. Hesseltine had found.  (AR 197-203.)  What seems clear from the record, however, is that Dr. Holmes did not review any records other than Dr. Hesseltine's to reach this conclusion.  (AR 202.)  This is problematic because it amounts to Dr. Holmes simply reaching a different conclusion than Dr. Hesseltine based solely on Dr. Hesseltine's records, which is not allowed.  See Orn, 495 F.3d at 631-32.

   Ultimately, the Court finds that, though some of the objective evidence did not fully support Dr. Hesseltine's opinion, that reason alone is not enough to uphold the ALJ's decision to reject the opinion.  Further, the ALJ's reliance on Dr. Holmes's opinion was in error because it was premised solely on Dr. Hesseltine's records.  For these reasons, the Court finds that the ALJ erred in addressing the doctors' opinions and that remand is necessary to allow him another opportunity to do so.

B.   The Credibility Finding

   The ALJ found that Plaintiff was not entirely credible because: (1) he performed "heavy" work for years after he allegedly became disabled; (2) despite claims of an inability to move his arms above his head without difficulty and pain, he was able to do so at the administrative hearing without apparent pain or difficulty; (3) the claim reviewer who met in person with Plaintiff did not observe any physical limitations; and (4) the reviewing physician opined that Plaintiff could function normally, which is consistent with the ALJ's observations of Plaintiff at the hearing.  (AR 13-14.)  For the reasons explained below, the ALJ's credibility finding will be affirmed.

   The ALJ found that Plaintiff's testimony that he could not work because of pain was undermined by the fact that he had been able to perform heavy work for ten years after the alleged onset of disability.  (AR 11-12 ("Both the earnings and the exertional level of the work indicate the claimant's functional capacity was greater than he alleged."); 14 (noting Plaintiff's earnings and his ability to do heavy work "seriously diminish[] [his] allegations concerning his disability.").)  This finding is supported by the record.  Plaintiff

claimed that he was disabled as of January 1998, but he worked installing fire sprinkler systems for ten years after that date. (AR 23.) This job required him to lift more than 100 pounds at times and frequently lift more than 50 pounds. (AR 146.)

It stands to reason that, if Plaintiff was performing heavy work for ten years after the alleged onset date, he was not disabled during that period and his testimony that he was not able to perform any work, (AR 35), was not credible. This is not because Plaintiff was trying to conceal the fact that he worked after 1998. He freely admitted in his submissions to the Agency before the hearing and in his testimony at the hearing that he had worked for this entire period. (AR 23, 145.) The problem is that he never amended his application to change his alleged onset date to a date after he stopped working. Thus, he was asking the ALJ to find that he was disabled as of 1998 in the face of evidence that he submitted that showed that he was performing heavy work during this same period. In a word, Plaintiff's approach was schizophrenic. And the ALJ did not err in questioning Plaintiff's testimony in light of the fact that he was working during the same time that he alleged that he was disabled.

Plaintiff seems to concede the error in his approach and tries, it appears, to amend his application in this court: "[Plaintiff] disputes the ALJ's findings of non-disability for the period of September 2008 forward." (Joint Stip. at 4.) This is not the time or place to amend the application. That should have been done before the Agency. Had Plaintiff done so, the result might have been different. This Court is charged with reviewing the correctness of the ALJ's decision as it was presented to the ALJ. As is clear from the record, Plaintiff claimed that he was disabled as of January 1, 1998, and

presented evidence that he was not disabled during most of this period.  Though the ALJ recognized that Plaintiff's employment barred him from recovering benefits through most of the period from January 1998 through December 2006 (AR 11), he was still left to grapple with the issue of whether Plaintiff was disabled after that date in light of the fact that Plaintiff was able to install sprinkler systems for 21 more months (from January 2007 to September 2008).  The ALJ's ultimate conclusion that Plaintiff was not credible in claiming that he could not perform work was a reasonable one.

The ALJ cited several other reasons for questioning Plaintiff's testimony.  He pointed out that the reviewing physician concluded that Plaintiff could function normally, which was consistent with the ALJ's observations.  In light of the Court's ruling regarding the ALJ's treatment of the doctors' opinions, this reason does not appear to still be valid.  Further, the ALJ's observation that Plaintiff was able to raise his arms above his head when gesturing during the hearing and that the claim reviewer did not observe any physical limitations are questionable bases for credibility findings.  *See, e.g., Perminter v. Heckler*, 765 F.2d 870, 872 (9th Cir. 1985) (criticizing "'sit and squirm' jurisprudence").  The ALJ also noted, however, that Plaintiff's treating physician reported in September 2008 that Plaintiff could move his arms and legs without difficulty, (AR 13-14, 209), which is obviously a valid reason for questioning Plaintiff's claim that he could not.  In the end, the Court affirms the ALJ's credibility finding based on the fact that Plaintiff's testimony that he could not perform even sedentary work was undermined by the fact that for most of the period of alleged disability he could and did perform heavy work.  This finding is further supported by the

fact that, contrary to his claim that he could not move his arms above his head, he could.

## IV. CONCLUSION

For the reasons set forth above, the Agency's decision is reversed and the case is remanded for further proceedings consistent with this opinion.[1]

IT IS SO ORDERED.

DATED: June 19, 2012.

_____
PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Soc Sec\CASWELL, 513\memo.opinion and ord.wpd

---

[1] The Court has considered Plaintiff's request that the case be remanded for an award of benefits. That request is denied. It is not clear from this record that Plaintiff is entitled to benefits and further proceedings are necessary to resolve that issue.